KEVIN C. POWERS, General Counsel
Nevada State Bar No. 6781
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
401 S. Carson St.
Carson City, NV 89701
Tel: (775) 684-6830; Fax: (775) 684-6761
Email: kpowers@lcb.state.nv.us
*Attorneys for Legislative Defendants Brenda J. Erdoes, in her official capacity as Director of the Legislative Counsel Bureau of the State of Nevada, and Nicole J. Cannizzaro, in her official capacity as Chair of the Legislative Commission of the State of Nevada*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

SHAWN MEEHAN, an individual; JANINE HANSEN, an individual; LYNN CHAPMAN, an individual; and MELISSA CLEMENT, an individual,

Plaintiffs,

vs.

STEPHEN F. SISOLAK, in his official capacity as Governor of the State of Nevada; AARON DARNELL FORD, in his official capacity as Attorney General of the State of Nevada; BRENDA J. ERDOES, in her official capacity as Director of the Legislative Counsel Bureau of the State of Nevada; NICOLE J. CANNIZZARO, in her official capacity as Chair of the Legislative Commission of the State of Nevada; and DOES 1 through 100,

Defendants.

Case No. 3:21-cv-00100-MMD-WGC

**LEGISLATIVE DEFENDANTS' LIMITED APPEARANCE AND MOTION TO SUSPEND ALL BRIEFING ON PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND TO STAY ALL PROCEEDINGS DUE TO (1) LACK OF PERSONAL JURISDICTION OVER LEGISLATIVE DEFENDANTS AND (2) PLAINTIFFS' APPEAL AND WRIT PETITION TO THE NINTH CIRCUIT CONCERNING THEIR EMERGENCY MOTION**

## LIMITED APPEARANCE AND MOTION

Legislative Defendants Brenda J. Erdoes, in her official capacity as Director of the Legislative Counsel Bureau of the State of Nevada ("Director Erdoes"), and Nevada State Senator Nicole J. Cannizzaro, in her official capacity as Chair of the Legislative Commission of the State

of Nevada ("Senator Cannizzaro"), by and through their counsel the Legal Division of the Legislative Counsel Bureau ("LCB Legal") under Nevada Revised Statutes ("NRS") 218F.720, hereby enter a limited appearance in this action for the purpose of filing this motion to suspend all briefing on Plaintiffs' emergency motion for preliminary injunction and to stay all proceedings due to: (1) lack of personal jurisdiction over Legislative Defendants; and (2) Plaintiffs' appeal and writ petition to the Ninth Circuit concerning their emergency motion.  This motion is made under FRCP 7(b) and LR II 7-2 and is based upon the following Memorandum of Points and Authorities and all pleadings, documents and exhibits on file in this case.

At the time of filing this motion, Plaintiffs have failed to serve the Legislative Defendants, or an agent designated by them to receive service of process, with the summons and complaint in compliance with the methods of service authorized by FRCP 4 or state law.  In the absence of such service, the Legislative Defendants have not officially become parties to this action, and this Court cannot exercise personal jurisdiction over the Legislative Defendants for any matters, including, without limitation, the emergency motion for preliminary injunction.  Therefore, the Legislative Defendants enter a limited appearance in this action for the purpose of filing this motion and asking this Court to suspend all briefing on the emergency motion for preliminary injunction and to stay all proceedings for lack of personal jurisdiction over the Legislative Defendants.

Additionally, the Legislative Defendants enter a limited appearance in this action for the purpose of filing this motion and asking this Court to suspend all briefing on Plaintiffs' emergency motion for preliminary injunction and to stay all proceedings while their appeal and writ petition concerning their emergency motion are before the Ninth Circuit.  By taking such action, this Court would be promoting judicial economy and avoiding the confusion that would ensue from having the same issues before two courts simultaneously.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  Background.**

**A.  Director Erdoes' authority to restrict or prohibit the public from entering the Legislative Building during a legislative session in order to protect the public's health, safety and welfare and provide all services necessary to the efficient and effective operation of the Legislature amid the ongoing and widespread public-health crisis caused by the COVID-19 pandemic.**

Under Nevada law, the State Legislative Building ("Legislative Building") in Carson City, Nevada, is a separate building from the State Capitol Building in Carson City, Nevada. NRS 331.130, 331.133, 331.135.  The Legislature has given the statutory authority to supervise and control the State Capitol Building to state officers of the executive branch of state government.  NRS 331.070, 331.120, 331.130, 331.133.  By contrast, the Legislature has reserved to the legislative branch of state government the statutory authority to supervise and control the Legislative Building and the grounds surrounding the Legislative Building during and between legislative sessions.  NRS 331.135.  The Legislature has assigned that statutory authority to Director Erdoes as the executive head of the LCB.  NRS 218F.110(1), 218F.300(1), 218F.500(2), 218F.520(1).

Under Nevada law, the LCB consists of the Legislative Commission, the Interim Finance Committee, the Director and five divisions: Administrative Division, Audit Division, Fiscal Analysis Division, Legal Division and Research Division.  NRS 218F.100(1).  The Director "serves as the executive head of the Legislative Counsel Bureau and shall direct and supervise all of its administrative and technical activities."  NRS 218F.110(1).  The LCB's divisions are also administered by chiefs of the divisions.  NRS 218F.100(2).  The chiefs of the divisions must "perform the respective duties assigned to them by law under the administrative supervision of the Director."  NRS 218F.110(1).  The Director may also serve as the chief of any of the LCB's divisions.  NRS 218F.100(3).

As part of their statutory powers and duties, the LCB's divisions provide all legal, fiscal, research, audit, administrative, technical and other services necessary to the efficient and effective operation of the Legislature. NRS Title 17 (State Legislative Department). For example, the LCB is required to provide "[a]ll administrative services necessary to the operation of the Legislature during and between regular and special sessions." NRS 218F.300(1).

To carry out the supervision and control of the Legislative Building and the grounds surrounding the Legislative Building during and between legislative sessions, the Legislature has made the LCB responsible for "[s]ecurity" and has invested the LCB with the statutory authority to "preserve order and security" within the Legislative Building and on the grounds surrounding the Legislative Building. NRS 218F.500(2)(i), 218F.520(1). Thus, as the executive head of the LCB, Director Erdoes has the statutory authority and responsibility to ensure that the LCB is able to fulfill its statutory mission to: (1) protect the public's health, safety and welfare within the Legislative Building and on the grounds surrounding the Legislative Building; and (2) provide all services necessary to the efficient and effective operation of the Legislature. NRS Title 17.

On June 26, 2020, LCB Legal provided Director Erdoes with a legal opinion regarding the Director's authority to restrict or prohibit the public from entering the Legislative Building during a legislative session in order to protect the public's health, safety and welfare and provide all services necessary to the efficient and effective operation of the Legislature amid the ongoing and widespread public-health crisis caused by the COVID-19 pandemic. (Legis. Defs.' Ex. 1.) The legal opinion was released publicly, and the media published the legal opinion on publicly accessible websites. See, e.g., Michelle Rindels, Public will be barred from attending Legislature's forthcoming special session in-person, The Nevada Independent (June 26, 2020).[1]

---

[1] Available at: https://thenevadaindependent.com/article/public-will-be-barred-from-attending-legislatures-forthcoming-special-session-in-person.

-4-

In the legal opinion, LCB Legal advised Director Erdoes regarding the following statutory and constitutional issues:

>   After considering the plain meaning of the statutory language in NRS Title 17 giving the Director—as the executive head of the LCB—the statutory authority to "preserve order and security" within the Legislative Building during a legislative session, and after interpreting that statutory language in line with what reason and public policy would indicate the Legislature intended, it is the opinion of this office that the Legislature's grant of statutory authority to the Director under NRS Title 17 allows the Director to restrict or prohibit the public from entering the Legislative Building during a legislative session in order to protect the public's health, safety and welfare and provide all services necessary to the efficient and effective operation of the Legislature amid the ongoing and widespread public-health crisis caused by the COVID-19 pandemic.

>   Furthermore, after interpreting the provisions of Article 4, Section 15 governing "open" legislative floor sessions and committee meetings according to what history, reason and public policy would indicate the drafters and the voters intended, it is the opinion of this office that if the Director exercises the statutory authority granted by the Legislature under NRS Title 17 to restrict or prohibit the public from entering the Legislative Building during a legislative session, the Director's action would comport with the requirement that legislative floor sessions and committee meetings must be "open" to the public under Article 4, Section 15, so long as the Director—as the executive head of the LCB—enables reasonable alternative means of communication which provide the public with the opportunity to observe the legislative floor sessions and committee meetings and communicate with Legislators without being physically present in the Legislative Building.  Moreover, because each House's standing rules are modeled on the provisions of Article 4, Section 15 governing "open" legislative floor sessions and committee meetings, it is the opinion of this office that the same legal conclusion applies to the requirement that legislative floor sessions and committee meetings must be "open" to the public under Assembly Standing Rule No. 11 and Senate Standing Rule No. 13.

>   Finally, if the Director exercises the statutory authority granted by the Legislature under NRS Title 17 to restrict or prohibit the public from entering the Legislative Building during a legislative session, it is the opinion of this office that the Director's action would comport with the rights of the public to free speech, to associate or assemble together, to instruct their legislative representatives and to petition the Legislature for redress of grievances under the First Amendment to the United States Constitution and Article 1, Sections 9 and 10 of the Nevada Constitution, so long as the Director—as the executive head of the LCB—enables reasonable alternative means of communication which provide the public with the opportunity to observe the legislative floor sessions and committee meetings and communicate with Legislators without being physically present in the Legislative Building.

1   (Legis. Defs.' Ex. 1 at 019-20.)

2       On January 21, 2021, Director Erdoes issued a press release explaining the logistics on how

3   the Legislature would operate initially within the Legislative Building during the 81st legislative

4   session beginning on February 1, 2021.  (Legis. Defs.' Ex. 2.)  Specifically, Director Erdoes

5   explained that the Legislative Building would be closed to all persons other than Legislators,

6   essential staff and a small news media pool.  (Legis. Defs.' Ex. 2 at 001.)  Director Erdoes also

7   explained that the LCB would enable reasonable alternative means of communication which

8   provide the public with the opportunity to observe the legislative floor sessions and committee

9   meetings and communicate with Legislators without being physically present in the Legislative

10  Building, as follows:

11      The 81st Session of the Nevada Legislature will begin on February 1, 2021, with the
        Legislative Building closed to all persons other than Legislators, essential staff and a
12      small news media pool.  Those persons who are not in the building will be able to
        observe all of the floor sessions in the Chambers of both houses and all committee
13      hearings in the various hearing rooms throughout the building via the Legislature's
        Website "View Events" Tab and YouTube.  Access for persons not in the Legislative
14      Building to observe and participate in the committee hearings will be available by
        reservation through the Legislature's Website for videoconference participation
15      through Zoom.  This reservation system will be available prior to session and a tutorial
        will be included.  In addition, persons not in the Legislative Building may provide
16      public comment to committees by telephone or choose to participate in committee
        hearings via videoconference at designated sites which are currently being developed
17      in various locations in the State.  Virtual meetings between individual Legislators and
        persons who are not in the building will be made possible through Microsoft Teams.
18      A weekly COVID-19 testing regimen for Legislators, staff and the news media pool in
        the building will be in place during the time the building is closed.

19

20  (Legis. Defs.' Ex. 2 at 001.)

21      Finally, Director Erdoes explained that after Legislators and essential staff have received

22  both COVID-19 vaccinations, the Legislature would initiate a plan to begin opening the

23  Legislative Building to members of the public and registered lobbyists to participate in committee

24  hearings in person, as follows:

After Legislators and essential staff have received both COVID-19 vaccinations, the Legislature will initiate a plan to begin opening the Legislative Building to members of the Public and registered Lobbyists to participate in committee hearings in person, by reservation through the Legislature's Website.  This reservation system will be available prior to the opening of the building to the Public and Lobbyists and a tutorial will be included.  Each person who participates in person in a committee hearing will be required to present a completed COVID-19 vaccination card or take a shallow nasal swab Rapid COVID-19 test before entering the building.  The tests will be provided on site at no cost to the person being tested.

(Legis. Defs.' Ex. 2 at 001.)

**B.   Procedural history of Plaintiffs' action.**

On February 17, 2021, Plaintiffs filed a complaint for damages and injunctive and declaratory relief under the federal civil rights statute in 42 U.S.C. § 1983.  (ECF No. 1.) Plaintiffs allege that they have been deprived of federal constitutional rights as a result of Director Erdoes' decision to restrict or prohibit the public from entering the Legislative Building during the 81st legislative session in order to protect the public's health, safety and welfare and provide all services necessary to the efficient and effective operation of the Nevada Legislature amid the ongoing and widespread public-health crisis caused by the COVID-19 pandemic.  (ECF No. 1.)

In their complaint, Plaintiffs name several state officers of the executive branch and legislative branch as defendants in their official capacities.  (ECF No. 1 at 1-2.)  The Executive Defendants are: (1) Stephen F. Sisolak, in his official capacity as Governor of the State of Nevada; and (2) Aaron Darnell Ford, in his official capacity as Attorney General of the State of Nevada. (ECF No. 1 at 1-2.)  The Legislative Defendants are: (1) Brenda J. Erdoes, in her official capacity as Director of the Legislative Counsel Bureau of the State of Nevada; and (2) Nevada State Senator Nicole J. Cannizzaro, in her official capacity as Chair of the Legislative Commission of the State of Nevada.  (ECF No. 1 at 1-2.)

On February 24, 2021, Plaintiffs filed an emergency motion for preliminary injunction. (ECF No. 6.)  Under LR II 7.4, before filing their emergency motion for preliminary injunction,

1   Plaintiffs were required to notify the Legislative Defendants of the emergency motion and

2   participate in the meet-and-confer process required by this Court's local rules, but they failed to do

3   so.   Under FRCP 5(a)(1)(D), when Plaintiffs filed their emergency motion for preliminary

4   injunction, Plaintiffs were required to serve the Legislative Defendants with the emergency

5   motion, but they failed to do so.   On February 25, 2021, this Court entered a minute order

6   regarding the emergency motion (ECF No. 8), stating that:

7       The Court has reviewed Plaintiff's motion for preliminary injunction (ECF No. 6, the
        "PI" motion.)   The normal briefing schedule will apply to the motion because
8       Plaintiffs do not specifically request an expedited briefing schedule in their PI motion
        and did not otherwise establish they are entitled to an expedited briefing schedule
9       under LR 7-4.  The Court will determine whether to set a hearing upon reviewing the
        subsequent briefs.

10

11      On February 26, 2021, Plaintiffs filed affidavits of service of the summons and complaint on

12  Governor Sisolak and Attorney General Ford.  (ECF No. 10.)  However, at the time of filing this

13  motion, Plaintiffs have failed to serve the Legislative Defendants, or an agent designated by them

14  to receive service of process, with the summons and complaint in compliance with the methods of

15  service authorized by FRCP 4 or state law.   Plaintiffs also have not served the Legislative

16  Defendants, or an attorney designated by them to receive service, with the emergency motion for

17  preliminary injunction and all other documents filed by Plaintiffs in this action in compliance with

18  the methods of service authorized by FRCP 5(b).

19      Finally, on March 1, 2021, Plaintiffs filed a notice of appeal to challenge this Court's minute

20  order regarding the briefing schedule for the emergency motion for preliminary injunction.  (ECF

21  No. 11.)  On March 3, 2021, the Ninth Circuit entered an order to show cause stating that "the

22  district court's February 25, 2021 minute order does not appear to be a final or appealable order,"

23  and the Ninth Circuit directed Plaintiffs to show cause why their appeal should not be dismissed

24  for lack of appellate jurisdiction.  (Legis. Defs.' Ex. 3 at 001.)  On March 8, 2021, Plaintiffs filed

their response to the Ninth Circuit's order to show cause, and they argued that the Ninth Circuit had appellate jurisdiction over their appeal.  (Legis. Defs.' Ex. 4 at 005-6.)  Additionally, Plaintiffs stated that they anticipate filing a petition for writ of mandamus with the Ninth Circuit under FRAP 21 and the All Writs Act in 28 U.S.C. § 1651, to challenge this Court's minute order regarding the briefing schedule for the emergency motion.  (Legis. Defs.' Ex. 4 at 005-6.)

**II.  Argument.**

**A.  The Legislative Defendants enter a limited appearance in this action to object to this Court's exercise of personal jurisdiction over them based on Plaintiffs' failure to serve constitutionally-required process on the Legislative Defendants or an agent designated by them to receive service of process.**

Under the Due Process Clause, a person may not be deprived of his legal rights in a judicial proceeding unless the person has been made a party to that proceeding by service of constitutionally-required process.  <u>Martin v. Wilks</u>, 490 U.S. 755, 758-62 (1989).  This constitutional rule stems from the "deep-rooted historic tradition that everyone should have his own day in court."  <u>Id.</u> at 762.  Thus, "[u]nless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights."  <u>Chase Nat'l Bank v. City of Norwalk</u>, 291 U.S. 431, 441 (1934).

Because service of process is a constitutional requirement, "[a] district court may not exercise personal jurisdiction over a defendant unless the defendant has been properly served with process, and the service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint."  <u>United States v. Ligas</u>, 549 F.3d 497, 500 (7th Cir. 2008) (citation omitted).  Consequently, the Ninth Circuit has determined that "[n]either actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4."  <u>Crowley v. Bannister</u>, 734 F.3d 967, 975 (9th Cir. 2013)

1    (quoting Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir.1982) (internal citations omitted)).

2    As further explained by the U.S. Supreme Court:

3        In the absence of service of process (or waiver of service by the defendant), a court
         ordinarily may not exercise power over a party the complaint names as defendant.  See
4        Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) ("Before
         a . . . court may exercise personal jurisdiction over a defendant, the procedural
5        requirement of service of summons must be satisfied."); Miss. Publ'g Corp. v.
         Murphree, 326 U.S. 438, 444-45 (1946) ("[S]ervice of summons is the procedure by
6        which a court . . . asserts jurisdiction over the person of the party served.").
         **Accordingly, one becomes a party officially, and is required to take action in that**
7        **capacity, only upon service of a summons or other authority-asserting measure**
         **stating the time within which the party served must appear and defend**.

8

9    Murphy Bros. v. Michetti Pipe Stringing, 526 U.S. 344, 350 (1999) (emphasis added).

10       When the plaintiff fails to serve defendants with constitutionally-required process, the

11   defendants may enter a limited appearance in the action to object to the district court's exercise of

12   personal jurisdiction over them.   Ligas, 549 F.3d at 500-04.   By entering such a limited

13   appearance, the defendants do not waive their rights to receive constitutionally-required process

14   from the plaintiff.  Id.

15       Accordingly, the Legislative Defendants enter a limited appearance in this action to object to

16   this Court's exercise of personal jurisdiction over them based on Plaintiffs' failure to serve

17   constitutionally-required process on the Legislative Defendants or an agent designated by them to

18   receive service of process.  By entering such a limited appearance, the Legislative Defendants do

19   not waive their rights to be served by Plaintiffs with constitutionally-required process.

20       Under FRCP 4(c)(1), Plaintiffs are responsible for serving the Legislative Defendants, or an

21   agent designated by them to receive service of process, with the summons and complaint in

22   compliance with the methods of service authorized by FRCP 4 or state law.  In particular, under

23   FRCP(4)(e), Plaintiffs are responsible for serving the Legislative Defendants with the summons

24   and complaint by:

    (1) **following state law** for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; **or**

    (2) **doing any of the following**:

      (A) delivering a copy of the summons and of the complaint to the individual personally;

      (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

      (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FRCP(4)(e) (emphasis added).

Under state law in NRCP 4.2(d)(2), in order to serve a state officer or employee who is sued in his or her official capacity, the plaintiff must serve the summons and complaint on:

      (A) **the Attorney General**, or a person designated by the Attorney General to receive service of process, at the Office of the Attorney General in Carson City; **and**

      (B) **the [state] officer or employee**, or an agent designated by him or her to receive service of process.

NRCP 4.2(d)(2) (emphasis added).

At the time of filing this motion, Plaintiffs have failed to serve the Legislative Defendants, or an agent designated by them to receive service of process, with the summons and complaint in compliance with the methods of service authorized by FRCP 4 or state law.  In the absence of such service, the Legislative Defendants have not officially become parties to this action, and this Court cannot exercise personal jurisdiction over the Legislative Defendants for any matters, including, without limitation, the emergency motion for preliminary injunction.  Therefore, the Legislative Defendants enter a limited appearance in this action for the purpose of filing this motion and asking this Court to suspend all briefing on the emergency motion for preliminary injunction and to stay all proceedings for lack of personal jurisdiction over the Legislative Defendants.

//

//

**B.   The Legislative Defendants enter a limited appearance in this action asking this Court to suspend all briefing on Plaintiffs' emergency motion for preliminary injunction and to stay all proceedings while their appeal and writ petition concerning their emergency motion are before the Ninth Circuit.**

As a general rule, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam).  However, this general rule is not "absolute." Nat. Res. Def. Council, Inc. v. Sw. Marine Inc., 242 F.3d 1163, 1166 (9th Cir. 2001).  For example, the transfer of jurisdiction from the district court to the court of appeals is not accomplished when "a litigant files a notice of appeal from an unappealable order." Estate of Conners v. O'Connor, 6 F.3d 656, 658 (9th Cir. 1993); Ruby v. Sec'y of Navy, 365 F.2d 385, 388-89 (9th Cir. 1966) (en banc).  Consequently, "[w]hen a Notice of Appeal is defective in that it refers to a non-appealable interlocutory order, it does not transfer jurisdiction to the appellate court, and so the ordinary rule that the district court cannot act until the mandate has issued on the appeal does not apply." Nascimento v. Dummer, 508 F.3d 905, 908 (9th Cir. 2007).  As further explained by the Ninth Circuit:

> [A]ppeals of such interlocutory orders do not transfer jurisdiction to the appellate court and thus do not strip the district court of jurisdiction to conduct further proceedings in the case.  This precedent signifies that when a litigant makes an improper interlocutory appeal, such action will not throw a monkey wrench into the machinery of our justice system.  Instead, when an improper appeal is taken, the district court retains its jurisdiction to act on the case, and its extant orders must be followed by the litigants, at risk of grave sanction.

Id. at 910 (citations omitted).

Even though the district court retains jurisdiction to act when a litigant files a notice of appeal from a non-appealable interlocutory order, the district court may nevertheless stay its proceedings while the appeal is pending to "promote judicial economy and avoid the confusion

that would ensue from having the same issues before two courts simultaneously." <u>Nat. Res. Def.</u>

<u>Council</u>, 242 F.3d at 1166; <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254-55 (1936) ("[T]he power to

stay proceedings is incidental to the power inherent in every court to control the disposition of the

causes on its docket."). Thus, the district court possesses the inherent power to control its docket

and promote efficient use of judicial resources by staying an action before the district court until

resolution of other judicial proceedings which bear upon the case. <u>Landis</u>, 299 U.S. at 254-55. As

explained by the Ninth Circuit:

> A trial court may, with propriety, find it is efficient for its own docket and the
> fairest course for the parties to enter a stay of an action before it, pending resolution of
> independent proceedings which bear upon the case. This rule applies whether the
> separate proceedings are judicial, administrative, or arbitral in character, and does not
> require that the issues in such proceedings are necessarily controlling of the action
> before the court. In such cases the court may order a stay of the action pursuant to its
> power to control its docket and calendar and to provide for a just determination of the
> cases pending before it.

<u>Leyva v. Certified Grocers of Cal.</u>, 593 F.2d 857, 863-64 (9th Cir. 1997) (citations omitted).

Accordingly, the decision whether to stay judicial proceedings until resolution of other related

proceedings rests "within the sound discretion of the trial court." <u>Cherokee Nation of Okla. v.</u>

<u>United States</u>, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (citations omitted).

In this case, Plaintiffs filed a notice of appeal on March 1, 2021, to challenge this Court's

minute order regarding the briefing schedule for the emergency motion for preliminary injunction.

(ECF No. 11.) On March 3, 2021, the Ninth Circuit entered an order to show cause stating that

"the district court's February 25, 2021 minute order does not appear to be a final or appealable

order," and the Ninth Circuit directed Plaintiffs to show cause why their appeal should not be

dismissed for lack of appellate jurisdiction. (Legis. Defs.' Ex. 3 at 001.) On March 8, 2021,

Plaintiffs filed their response to the Ninth Circuit's order to show cause, and they argued that the

Ninth Circuit had appellate jurisdiction over their appeal. (Legis. Defs.' Ex. 4 at 005-6.)

1    Additionally, Plaintiffs stated that they anticipate filing a petition for writ of mandamus with the

2    Ninth Circuit under FRAP 21 and the All Writs Act in 28 U.S.C. § 1651, to challenge this Court's

3    minute order regarding the briefing schedule for the emergency motion.  (Legis. Defs.' Ex. 4 at

4    005-6.)

5           Based on well-established law, it is clear that Plaintiffs filed a notice of appeal from a non-

6    appealable interlocutory order.  See 28 U.S.C. §§ 1291, 1292(a)(1).  In particular, under

7    Section 1292(a)(1), federal courts of appeals have jurisdiction over appeals from "[i]nterlocutory

8    orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions,

9    or refusing to dissolve or modify injunctions, except where a direct review may be had in the

10   Supreme Court."  28 U.S.C. § 1292(a)(1).  However, Section 1292(a)(1) imparts "appealability

11   only to those injunctive orders which affect the substance of the plaintiff's basic claim.  Procedural

12   rulings which are incidental to the resolution of the substantive issues are not within the scope of

13   this provision."  Shakur v. Malcolm, 525 F.2d 1144, 1147 (2d Cir. 1975); United Steelworkers of

14   Am. v. Aurora Equip. Co., 830 F.2d 753, 754 (7th Cir. 1987) ("[A] procedural order is not an

15   injunction.").

16          In this case, this Court's minute order regarding the briefing schedule for Plaintiffs'

17   emergency motion for preliminary injunction was purely a procedural order, and this Court did not

18   address or discuss the substance of the issues or the merits of whether Plaintiffs are entitled to

19   preliminary injunctive relief.  As a result, this Court's minute order involved a procedural ruling

20   that was incidental to the resolution of the substantive issues raised by the emergency motion for

21   preliminary injunction.  Under these circumstances, it is clear that Plaintiffs filed a notice of

22   appeal from a non-appealable interlocutory order and that, as a result, this Court retains

23   jurisdiction over this case.  Nevertheless, this Court should suspend all briefing on Plaintiffs'

24   emergency motion for preliminary injunction and stay all proceedings while their appeal and writ

petition concerning their emergency motion are before the Ninth Circuit in order to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously.

Finally, in their response to the Ninth Circuit's order to show cause, Plaintiffs also stated that they anticipate filing a petition for writ of mandamus with the Ninth Circuit to challenge this Court's minute order regarding the briefing schedule for the emergency motion.  (Legis. Defs.' Ex. 4 at 005-6.)   However, the Ninth Circuit has determined that the filing of "petitions for extraordinary writs do not destroy the district court's jurisdiction in the underlying case." Nascimento v. Dummer, 508 F.3d 905, 910 (9th Cir. 2007); Ellis v. U.S. Dist. Ct., 360 F.3d 1022, 1023 (9th Cir. 2004) (en banc) ("The district court does not lose jurisdiction over a case merely because a litigant files an interlocutory petition for an extraordinary writ.").   Nevertheless, this Court should suspend all briefing on Plaintiffs' emergency motion for preliminary injunction and stay all proceedings while their appeal and writ petition concerning their emergency motion are before the Ninth Circuit in order to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously.

**III.  Conclusion.**

The Legislative Defendants enter a limited appearance in this action for the purpose of filing this motion and asking this Court to suspend all briefing on Plaintiffs' emergency motion for preliminary injunction and to stay all proceedings because Plaintiffs have failed to serve the Legislative Defendants, or an agent designated by them to receive service of process, with the summons and complaint in compliance with the methods of service authorized by FRCP 4 or state law.  In the absence of such service, the Legislative Defendants have not officially become parties to this action, and this Court cannot exercise personal jurisdiction over the Legislative Defendants for any matters, including, without limitation, the emergency motion for preliminary injunction.

1    Additionally, the Legislative Defendants enter a limited appearance in this action for the

2    purpose of filing this motion and asking this Court to suspend all briefing on Plaintiffs' emergency

3    motion for preliminary injunction and to stay all proceedings while their appeal and writ petition

4    concerning their emergency motion are before the Ninth Circuit.  By taking such action, this Court

5    would be promoting judicial economy and avoiding the confusion that would ensue from having

6    the same issues before two courts simultaneously.

7    DATED:    This **9th** day of March, 2021.

8    Respectfully submitted,

9    By:    /s/  Kevin C. Powers

10   **KEVIN C. POWERS**, General Counsel
     Nevada State Bar No. 6781
     NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
11   401 S. Carson St.
     Carson City, NV 89701
12   Tel: (775) 684-6830; Fax: (775) 684-6761
     Email: kpowers@lcb.state.nv.us
13   *Attorneys for Legislative Defendants Brenda J. Erdoes, in her official capacity*
     *as Director of the Legislative Counsel Bureau of the State of Nevada, and Nicole*
14   *J. Cannizzaro, in her official capacity as Chair of the Legislative Commission of*
     *the State of Nevada*

15

16

17

18

19

20

21

22

23

24

-16-

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of the Nevada Legislative Counsel Bureau, Legal Division, and that on the __9th__ day of March, 2021, pursuant to FRCP 5(b) and LR Part IC, I filed and served a true and correct copy of the Legislative Defendants' Limited Appearance and Motion to Suspend All Briefing on Plaintiffs' Emergency Motion for Preliminary Injunction and to Stay All Proceedings Due to (1) Lack of Personal Jurisdiction Over Legislative Defendants and (2) Plaintiffs' Appeal and Writ Petition to the Ninth Circuit Concerning Their Emergency Motion, by using the Court's CM/ECF system for electronic service directed to the following:

**SIGAL CHATTAH, ESQ.**                          **AARON D. FORD**
CHATTAH LAW GROUP                                Attorney General
5875 S. Rainbow Blvd. #203                       OFFICE OF THE ATTORNEY GENERAL
Las Vegas, NV 89118                              100 N. Carson St.
Chattahlaw@gmail.com                             Carson City, NV 8970l
*Attorneys for Plaintiffs*                       *Attorneys for Executive Defendants Stephen F.*
                                                 *Sisolak, in his official capacity as Governor of the*
                                                 *State of Nevada, and Aaron Darnell Ford, in his*
                                                 *official capacity as Attorney General of the State*
                                                 *of Nevada.*

            /s/  Kevin C. Powers
            An Employee of the Legislative Counsel Bureau

-17-