KEVIN C. POWERS, General Counsel
Nevada State Bar No. 6781
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
401 S. Carson St.
Carson City, NV 89701
Tel: (775) 684-6830; Fax: (775) 684-6761
Email: kpowers@lcb.state.nv.us
*Attorneys for Legislative Defendants Brenda J. Erdoes, in her official capacity as Director of the Legislative Counsel Bureau of the State of Nevada, and Nicole J. Cannizzaro, in her official capacity as Chair of the Legislative Commission of the State of Nevada*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

SHAWN MEEHAN, an individual; JANINE HANSEN, an individual; LYNN CHAPMAN, an individual; and MELISSA CLEMENT, an individual,

    Plaintiffs,

    vs.

STEPHEN F. SISOLAK, in his official capacity as Governor of the State of Nevada; AARON DARNELL FORD, in his official capacity as Attorney General of the State of Nevada; BRENDA J. ERDOES, in her official capacity as Director of the Legislative Counsel Bureau of the State of Nevada; NICOLE J. CANNIZZARO, in her official capacity as Chair of the Legislative Commission of the State of Nevada; and DOES 1 through 100,

    Defendants.

Case No. 3:21-cv-00100-MMD-WGC

**LEGISLATIVE DEFENDANTS' MOTION TO DISMISS ALL FEDERAL CLAIMS FOR LACK OF SUBJECT-MATTER JURISDICTION AND DECLINE SUPPLEMENTAL JURISDICTION OVER ALL STATE CLAIMS**

**MOTION**

Legislative Defendants Brenda J. Erdoes, in her official capacity as Director of the Legislative Counsel Bureau of the State of Nevada ("Director Erdoes"), and Nevada State Senator Nicole J. Cannizzaro, in her official capacity as Chair of the Legislative Commission of the State of Nevada ("Senator Cannizzaro"), by and through their counsel the Legal Division of the Legislative Counsel Bureau ("LCB Legal") under Nevada Revised Statutes ("NRS") 218F.720, hereby file this Motion to Dismiss all Federal Claims for Lack of Subject-Matter Jurisdiction and Decline Supplemental Jurisdiction over all State Claims. This motion is made under FRCP 12(h)(3) and LR-II 7-2 and is based upon the following Memorandum of Points and Authorities and all pleadings, documents and exhibits on file in this case.

**INTRODUCTION**

On Feb. 17, 2021, Plaintiffs filed a complaint for damages and injunctive and declaratory relief under the federal civil rights statute in 42 U.S.C. § 1983. (ECF No. 1.) Plaintiffs are four individuals who, on behalf of themselves, seek entry to the Legislative Building ("Building") to engage in lobbying activities. (ECF No. 1 at 1-2.) In their complaint, Plaintiffs alleged that they have been deprived of federal and state constitutional rights as a result of the decisions of Director Erdoes, as the executive head of the LCB, to restrict or prohibit lobbyists and the public from physically entering the Building in response to the pandemic. (ECF No. 1 at 18-25.)

On Feb. 24, 2021, Plaintiffs filed an emergency motion for preliminary injunction based on their federal and state constitutional claims. (ECF No. 6.) On Feb. 25, 2021, this Court entered a minute order (ECF No. 8), stating that:

> The Court has reviewed Plaintiff's motion for preliminary injunction (ECF No. 6, the "PI" motion.) The normal briefing schedule will apply to the motion because Plaintiffs do not specifically request an expedited briefing schedule in their PI motion and did not otherwise establish they are entitled to an expedited briefing schedule under LR 7-4. The Court will determine whether to set a hearing upon reviewing the

subsequent briefs.

On Mar. 31, 2021, this Court approved a Stipulation and Order Regarding Service of Process on Legislative Defendants, Briefing Schedule for Motions, and Related Matters. (ECF No. 25.) Under the stipulation and order, Legislative Defendants agreed to appear voluntarily in this action and waived their rights to be served by Plaintiffs with a summons and complaint under FRCP 4. (ECF No. 25 at 3.) The parties also agreed to a briefing schedule for Plaintiffs' motion for preliminary injunction, which required Legislative Defendants to file their response not later than Apr. 21, 2021. (ECF No. 25 at 3-4.) However, on Apr. 21, 2021, Legislative Defendants filed a motion to extend time to file their response not later than Apr. 26, 2021 (ECF No. 28), which this Court granted. (ECF No. 29.)

On Apr. 26, 2021, Legislative Defendants filed their response to Plaintiffs' motion for preliminary injunction, raising several arguments in opposition to the motion. (ECF No. 30.) In particular, Legislative Defendants argued that because the Building has been reopened in a manner that allows lobbyists and the public to enter the Building under health-and-safety protocols, Director Erdoes has voluntarily ceased the conduct that was initially challenged by Plaintiffs, so their motion for preliminary injunction must be denied as moot. (ECF No. 30 at 16-18.) Also on Apr. 26, 2021, Legislative Defendants filed their answer (ECF No. 31) to Plaintiffs' civil rights complaint for damages and injunctive and declaratory relief.

On Apr. 27, 2021, this Court scheduled a videoconference hearing on Plaintiffs' motion for preliminary injunction for May 12, 2021. (ECF No. 32.) In its scheduling order, this Court stated that "the Court is particularly interested in the mootness question" raised by Legislative Defendants in their response to Plaintiffs' motion for preliminary injunction. (ECF No. 32.)

On May 3, 2021, Plaintiffs filed their reply to Legislative Defendants' response to the motion for preliminary injunction. (ECF No. 33.) In their reply, Plaintiffs state that the reopening

of the Building under health-and-safety protocols rendered their motion for preliminary injunction moot. (ECF No. 33 at 2-4.) However, Plaintiffs also contend that they are entitled to engage in discovery on their claims for declaratory relief. (ECF No. 33 at 2-4.)

On May 4, 2021, Legislative Defendants filed this motion to dismiss all federal claims for lack of subject-matter jurisdiction and decline supplemental jurisdiction over all state claims. First, this Court lacks subject-matter jurisdiction over all of Plaintiffs' federal claims under section 1983 for prospective declaratory and injunctive relief because those claims are moot. Second, this Court lacks subject-matter jurisdiction over all of Plaintiffs' federal claims under section 1983 for retrospective declaratory and monetary relief because those claims are barred by the Eleventh Amendment. Consequently, because this Court lacks subject-matter jurisdiction over all of Plaintiffs' federal claims under section 1983, it must dismiss them for lack of subject-matter jurisdiction under FRCP 12(h)(3).

Finally, because this Court lacks subject-matter jurisdiction over all of Plaintiffs' federal claims under section 1983, this Court should decline to exercise supplemental jurisdiction over all of Plaintiffs' state constitutional claims. All of the factors to be considered under the supplemental jurisdiction doctrine—judicial economy, convenience, fairness and comity—point toward this Court declining to exercise supplemental jurisdiction over all of Plaintiffs' state constitutional claims. This is particularly true because Plaintiffs' state constitutional claims under Article 1, Section 1 and Article 4, Section 15 of the Nevada Constitution raise novel, complex and policy-laden issues of state law and Nevada's legislative branch has a compelling interest in ensuring that the Nevada Supreme Court decides those state-law issues of first impression. Therefore, in addition to dismissing all of Plaintiffs' federal claims for lack of subject-matter jurisdiction, this Court should decline to exercise supplemental jurisdiction over all of Plaintiffs' state constitutional claims.

# BACKGROUND

**I.   Director Erdoes' statutory authority to restrict or prohibit lobbyists and the public from entering the Building during a legislative session in order to protect the public's health, safety and welfare and provide all services necessary to the efficient and effective operation of the Legislature amid the ongoing and widespread public-health crisis caused by the COVID-19 pandemic.**

Under Nevada law, the Legislative Building in Carson City is a separate building from the State Capitol Building, which contains offices for the state executive branch and is under the supervision and control of that branch. NRS 331.070, 331.120, 331.130, 331.133, 331.135. By contrast, the Legislature has given the state legislative branch the statutory authority to supervise and control the Legislative Building and the grounds surrounding the Building during and between legislative sessions. NRS 331.135. The Legislature has assigned that statutory authority to Director Erdoes as the executive head of the LCB.  NRS 218F.110(1), 218F.300(1), 218F.500(2), 218F.520(1).

The LCB consists of the Legislative Commission, the Interim Finance Committee, the Director and five divisions: Administrative Division, Audit Division, Fiscal Analysis Division, Legal Division and Research Division. NRS 218F.100(1). The Director "serves as the executive head of the Legislative Counsel Bureau and shall direct and supervise all of its administrative and technical activities." NRS 218F.110(1). The LCB's divisions are also administered by chiefs of the divisions, who must "perform the respective duties assigned to them by law under the administrative supervision of the Director." NRS 218F.100(2)-(5), 218F.110(1). The Director may also serve as the chief of any of the LCB's divisions. NRS 218F.100(6).

As part of their statutory powers and duties, the LCB's divisions provide all legal, fiscal, research, audit, administrative, technical and other services necessary to the efficient and effective operation of the Legislature. NRS Title 17 (State Legislative Department). For example, the LCB is required to provide "[a]ll administrative services necessary to the operation of the Legislature

during and between regular and special sessions." NRS 218F.300(1). To carry out the supervision and control of the Building and the grounds surrounding the Building during and between legislative sessions, the Legislature has made the LCB responsible for "[s]ecurity" and has invested the LCB with the statutory authority to "preserve order and security" within the Building and on the grounds surrounding the Building. NRS 218F.500(2)(i), 218F.520(1). Thus, as the executive head of the LCB, Director Erdoes has the statutory authority and responsibility to ensure that the LCB is able to fulfill its statutory mission to: (1) protect the public's health, safety and welfare within the Building and on the grounds surrounding the Building; and (2) provide all services necessary to the efficient and effective operation of the Legislature. NRS Title 17.

On June 26, 2020, LCB Legal provided Director Erdoes with a legal opinion regarding the Director's authority to restrict or prohibit the public from entering the Building during a legislative session in order to protect the public's health, safety and welfare and provide all services necessary to the efficient and effective operation of the Legislature amid the ongoing and widespread public-health crisis caused by the pandemic.[1] (Legis. Defs.' Ex. 1.) The legal opinion was released publicly, and the media published the legal opinion on publicly accessible websites.[2] In the legal opinion, LCB Legal advised Director Erdoes regarding the following issues:

> After considering the plain meaning of the statutory language in NRS Title 17 giving the Director—as the executive head of the LCB—the statutory authority to "preserve order and security" within the Legislative Building during a legislative session, and after interpreting that statutory language in line with what reason and public policy would indicate the Legislature intended, it is the opinion of this office that the Legislature's grant of statutory authority to the Director under NRS Title 17

[1] Legislative Defendants request this Court to take judicial notice of their exhibits as "matters of public record." Lawson v. Klondex Mines, 450 F.Supp.3d 1057, 1070-71 (D. Nev. 2020) (quoting Reyn's Pasta Bella v. Visa USA, 442 F.3d 741, 746 n.6 (9th Cir. 2006)).

[2] See, e.g., Michelle Rindels, Public will be barred from attending Legislature's forthcoming special session in-person, The Nevada Independent (June 26, 2020), available at: https://thenevadaindependent.com/article/public-will-be-barred-from-attending-legislatures-forthcoming-special-session-in-person.

-6-

allows the Director to restrict or prohibit the public from entering the Legislative Building during a legislative session in order to protect the public's health, safety and welfare and provide all services necessary to the efficient and effective operation of the Legislature amid the ongoing and widespread public-health crisis caused by the COVID-19 pandemic.

Furthermore, after interpreting the provisions of Article 4, Section 15 governing "open" legislative floor sessions and committee meetings according to what history, reason and public policy would indicate the drafters and the voters intended, it is the opinion of this office that if the Director exercises the statutory authority granted by the Legislature under NRS Title 17 to restrict or prohibit the public from entering the Legislative Building during a legislative session, the Director's action would comport with the requirement that legislative floor sessions and committee meetings must be "open" to the public under Article 4, Section 15, so long as the Director—as the executive head of the LCB—enables reasonable alternative means of communication which provide the public with the opportunity to observe the legislative floor sessions and committee meetings and communicate with Legislators without being physically present in the Legislative Building.  Moreover, because each House's standing rules are modeled on the provisions of Article 4, Section 15 governing "open" legislative floor sessions and committee meetings, it is the opinion of this office that the same legal conclusion applies to the requirement that legislative floor sessions and committee meetings must be "open" to the public under Assembly Standing Rule No. 11 and Senate Standing Rule No. 13.

Finally, if the Director exercises the statutory authority granted by the Legislature under NRS Title 17 to restrict or prohibit the public from entering the Legislative Building during a legislative session, it is the opinion of this office that the Director's action would comport with the rights of the public to free speech, to associate or assemble together, to instruct their legislative representatives and to petition the Legislature for redress of grievances under the First Amendment to the United States Constitution and Article 1, Sections 9 and 10 of the Nevada Constitution, so long as the Director—as the executive head of the LCB—enables reasonable alternative means of communication which provide the public with the opportunity to observe the legislative floor sessions and committee meetings and communicate with Legislators without being physically present in the Legislative Building.

(Legis. Defs.' Ex. 1 at 019-20.)

On Jan. 21, 2021, Director Erdoes issued a press release explaining how the Legislature would operate **initially** within the Building during the 81st session beginning on Feb. 1, 2021. (Legis. Defs.' Ex. 2.) Director Erdoes explained that the Building would be closed to all persons other than legislators, essential staff and a small news media pool. (Legis. Defs.' Ex. 2 at 001.) Director Erdoes also explained that the LCB would enable reasonable alternative means of

communication which provide lobbyists and the public with the opportunity to observe legislative floor sessions and committee meetings and communicate with legislators without being physically present in the Building, as follows:

> The 81st Session of the Nevada Legislature will begin on February 1, 2021, with the Legislative Building closed to all persons other than Legislators, essential staff and a small news media pool. Those persons who are not in the building will be able to observe all of the floor sessions in the Chambers of both houses and all committee hearings in the various hearing rooms throughout the building via the Legislature's Website "View Events" Tab and YouTube. Access for persons not in the Legislative Building to observe and participate in the committee hearings will be available by reservation through the Legislature's Website for videoconference participation through Zoom. This reservation system will be available prior to session and a tutorial will be included. In addition, persons not in the Legislative Building may provide public comment to committees by telephone or choose to participate in committee hearings via videoconference at designated sites which are currently being developed in various locations in the State. Virtual meetings between individual Legislators and persons who are not in the building will be made possible through Microsoft Teams. A weekly COVID-19 testing regimen for Legislators, staff and the news media pool in the building will be in place during the time the building is closed.

(Legis. Defs.' Ex. 2 at 001.)

Finally, Director Erdoes explained that after legislators and essential staff received both doses of the COVID-19 vaccination, the Legislature would initiate a plan to begin reopening the Building to lobbyists and the public under certain health-and-safety protocols:

> After Legislators and essential staff have received both COVID-19 vaccinations, the Legislature will initiate a plan to begin opening the Legislative Building to members of the Public and registered Lobbyists to participate in committee hearings in person, by reservation through the Legislature's Website. This reservation system will be available prior to the opening of the building to the Public and Lobbyists and a tutorial will be included. Each person who participates in person in a committee hearing will be required to present a completed COVID-19 vaccination card or take a shallow nasal swab Rapid COVID-19 test before entering the building. The tests will be provided on site at no cost to the person being tested.

(Legis. Defs.' Ex. 2 at 001.)

On Apr. 9, 2021, Director Erdoes issued a press release announcing the reopening plan for the Building. (Legis. Defs.' Ex. 3 at 001.) On Apr. 15, 2021, the Building was reopened under

certain health-and-safety protocols, and lobbyists and the public are allowed to enter the Building after making an appointment and complying with the health-and-safety protocols using the following appointment process:

> Appointments to enter the Legislative Building must be received at least 24 hours in advance.  The number of people who will be able to make an appointment to attend a hearing held by a standing committee will be limited to a specified number per committee, which will be based upon the current COVID-19 restrictions applicable at the time of the meeting.  In addition, each Legislator will be authorized to bring in one person per day to meet with the Legislator in person in the Legislative Building. When a Legislator approves a meeting with the person, the staff of the Legislator will enter the appointment into the electronic reservation system.  Therefore, the process for making appointments will be a little different depending on the purpose for the visit to the Legislative Building.

(Legis. Defs.' Ex. 3 at 001.)  Therefore, Director Erdoes has voluntarily ceased the conduct that was initially challenged by Plaintiffs in their complaint, and they are now allowed to enter the Building after making an appointment and complying with the health-and-safety protocols.

## II.   Procedural history of Plaintiffs' action.

On Feb. 17, 2021, Plaintiffs filed a complaint for damages and injunctive and declaratory relief under the federal civil rights statute in 42 U.S.C. § 1983. (ECF No. 1.) Plaintiffs are four individuals who, on behalf of themselves, seek entry to the Building to engage in lobbying activities. (ECF No. 1 at 1-2.) In their complaint, Plaintiffs alleged that they have been deprived of federal and state constitutional rights as a result of the decisions of Director Erdoes, as the executive head of the LCB, to restrict or prohibit lobbyists and the public from physically entering the Building in response to the pandemic. (ECF No. 1 at 18-25.)

In their complaint, Plaintiffs named several state officers of the executive branch and legislative branch as defendants in their official capacities. (ECF No. 1 at 1-2.) As named in the complaint, the Executive Defendants were: (1) Stephen F. Sisolak, in his official capacity as Governor of the State of Nevada; and (2) Aaron D. Ford, in his official capacity as Attorney

General of the State of Nevada. (ECF No. 1 at 1-2.) On Mar. 23, 2021, pursuant to FRCP 41(a)(1)(A)(i), Plaintiffs voluntarily dismissed, without prejudice, those Executive Defendants from this action. (ECF No. 21.) As named in the complaint, Legislative Defendants are Director Erdoes and Senator Cannizzaro in her official capacity as Chair of the Legislative Commission. (ECF No. 1 at 1-2.)

On Feb. 24, 2021, Plaintiffs filed an emergency motion for preliminary injunction based on their federal and state constitutional claims. (ECF No. 6.) On Feb. 25, 2021, this Court entered a minute order (ECF No. 8), stating that:

> The Court has reviewed Plaintiff's motion for preliminary injunction (ECF No. 6, the "PI" motion.)  The normal briefing schedule will apply to the motion because Plaintiffs do not specifically request an expedited briefing schedule in their PI motion and did not otherwise establish they are entitled to an expedited briefing schedule under LR 7-4.  The Court will determine whether to set a hearing upon reviewing the subsequent briefs.

On Mar. 1, 2021, Plaintiffs filed a notice of appeal to the Ninth Circuit to challenge this Court's minute order regarding the briefing schedule for the motion for preliminary injunction. (ECF No. 11.) On Mar. 10, 2021, the Ninth Circuit entered an order dismissing Plaintiffs' appeal for lack of appellate jurisdiction because "the district court's February 25, 2021 minute order [was] not a final or appealable order." (ECF No. 15.)

On Mar. 31, 2021, this Court approved a Stipulation and Order Regarding Service of Process on Legislative Defendants, Briefing Schedule for Motions, and Related Matters. (ECF No. 25.) Under the stipulation and order, Legislative Defendants agreed to appear voluntarily in this action and waived their rights to be served by Plaintiffs with a summons and complaint under FRCP 4. (ECF No. 25 at 3.) The parties also agreed to a briefing schedule for Plaintiffs' motion for preliminary injunction, which required Legislative Defendants to file their response not later than Apr. 21, 2021. (ECF No. 25 at 3-4.) However, on Apr. 21, 2021, Legislative Defendants filed

a motion to extend time to file their response not later than Apr. 26, 2021 (ECF No. 28), which this Court granted. (ECF No. 29.)

On Apr. 26, 2021, Legislative Defendants filed their response to Plaintiffs' motion for preliminary injunction, raising several arguments in opposition to the motion. (ECF No. 30.) In particular, Legislative Defendants argued that because the Building has been reopened in a manner that allows lobbyists and the public to enter the Building under health-and-safety protocols, Director Erdoes has voluntarily ceased the conduct that was initially challenged by Plaintiffs, so their motion for preliminary injunction must be denied as moot. (ECF No. 30 at 16-18.) Also on Apr. 26, 2021, Legislative Defendants filed their answer (ECF No. 31) to Plaintiffs' civil rights complaint for damages and injunctive and declaratory relief.

On Apr. 27, 2021, this Court scheduled a videoconference hearing on Plaintiffs' motion for preliminary injunction for May 12, 2021. (ECF No. 32.) In its scheduling order, this Court stated that "the Court is particularly interested in the mootness question" raised by Legislative Defendants in their response to Plaintiffs' motion for preliminary injunction. (ECF No. 32.)

On May 3, 2021, Plaintiffs filed their reply to Legislative Defendants' response to the motion for preliminary injunction. (ECF No. 33.) In their reply, Plaintiffs state that the reopening of the Building under health-and-safety protocols rendered their motion for preliminary injunction moot. (ECF No. 33 at 2-4.) However, Plaintiffs also contend that they are entitled to engage in discovery on their claims for declaratory relief. (ECF No. 33 at 2-4.) On May 4, 2021, Legislative Defendants filed this motion to dismiss all federal claims for lack of subject-matter jurisdiction and decline supplemental jurisdiction over all state claims.

//

//

//

-11-

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   This Court lacks subject-matter jurisdiction over all of Plaintiffs' federal claims under section 1983 for prospective declaratory and injunctive relief because those claims are moot.**

Because federal courts are courts of limited jurisdiction under Article III of the Federal Constitution, "[t]he objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, **at any stage in the litigation**." Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006) (emphasis added). This jurisdictional rule is codified in FRCP 12(h)(3), which provides that "[i]f the court determines **at any time** that it lacks subject-matter jurisdiction, the court **must** dismiss the action." FRCP 12(h)(3) (emphasis added).

In order for a federal court to have subject-matter jurisdiction, the claims in the complaint must present an actual case or controversy under Article III "at all stages of review, not merely at the time the complaint is filed." United States v. Sanchez-Gomez, 138 S.Ct. 1532, 1537 (2018) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)). As a result, if a case becomes moot at any point during the proceedings, the case no longer presents an actual case or controversy under Article III, and the case "is outside the jurisdiction of the federal courts." Id.

A case becomes moot when it is impossible for the federal courts to grant "any effectual relief whatever" to the complaining party. Knox v. Serv. Employees Int'l Union, 567 U.S. 298, 307 (2012) (quoting Erie v. Pap's A.M., 529 U.S. 277, 287 (2000)). As a general rule, the voluntary cessation of a challenged practice does not moot a case unless "subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Trinity Lutheran Church v. Comer, 137 S.Ct. 2012, 2019 n.1 (2017) (quoting Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 189 (2000)). However, courts "treat the voluntary cessation of challenged conduct by **government officials** 'with more solicitude . . . than similar action by private parties.'" Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers,

941 F.3d 1195, 1198 (9th Cir. 2019) (en banc) (quoting Am. Cargo Transp. v. United States, 625 F.3d 1176, 1180 (9th Cir. 2010) (emphasis added)). The reason for this rule is that "[t]he government's change of policy presents a special circumstance in the world of mootness. Of course there is always the possibility of bad faith and a change of heart. But, unlike in the case of a private party, we presume the government is acting in good faith." Am. Cargo Transp., 625 F.3d at 1180.

In their complaint, Plaintiffs challenge Director Erdoes' decisions to restrict or prohibit lobbyists and the public from entering the Building in order to protect the public's health, safety and welfare and provide all services necessary to the efficient and effective operation of the Legislature amid the ongoing and widespread public-health crisis caused by the pandemic. (ECF No. 1 at 4-17.) However, on Apr. 15, 2021, the Building was reopened under health-and-safety protocols, and lobbyists and the public are allowed to enter the Building after making an appointment and complying with the health-and safety protocols. (Legis. Defs.' Ex. 3 at 001.) Therefore, Director Erdoes has voluntarily ceased the conduct that was initially challenged by Plaintiffs in their complaint, and they are now allowed to enter the Building after making an appointment and complying with the health-and-safety protocols. Because Director Erdoes has changed the policy initially challenged by Plaintiffs in their complaint, Plaintiffs' claims under section 1983 for prospective declaratory and injunctive relief no longer present an actual case or controversy under Article III, and their claims for prospective declaratory and injunctive relief are moot. Consequently, because this Court lacks subject-matter jurisdiction over those moot claims, it must dismiss those claims for lack of subject-matter jurisdiction under FRCP 12(h)(3).

In their reply, Plaintiffs contend that they are entitled to engage in discovery on their claims for prospective declaratory relief. (ECF No. 33 at 2-4.) Plaintiffs are wrong as a matter of law. It is well established that "[a] federal court cannot issue a declaratory judgment if a claim has become

moot." <u>Pub. Utils. Comm'n of Cal. v. FERC</u>, 100 F.3d 1451, 1459 (9th Cir. 1996); <u>Native Vill. of Noatak v. Blatchford</u>, 38 F.3d 1505, 1514 (9th Cir. 1994) ("The district court, however, may grant declaratory relief **only** when there is an actual case or controversy; a declaratory judgment may not be used to secure judicial determination of moot questions." (emphasis added)), *overruled on other grounds by* <u>Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers</u>, 941 F.3d 1195, 1198 (9th Cir. 2019) (en banc)). As explained by the Supreme Court:

> As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues "concrete legal issues, presented in actual cases, not abstractions" are requisite. This is as true of declaratory judgments as any other field.

<u>United Pub. Workers of Am. v. Mitchell</u>, 330 U.S. 75, 89 (1947) (quoting <u>United States v. Appalachian Elec. Power Co.</u>, 311 U.S. 377, 423 (1940)).

In this case, Plaintiffs' claims for prospective declaratory relief are based entirely on Director Erdoes' decisions to restrict or prohibit lobbyists and the public from entering the Building in order to protect the public's health, safety and welfare and provide all services necessary to the efficient and effective operation of the Legislature amid the ongoing and widespread public-health crisis caused by the pandemic. (ECF No. 1 at 4-17.) However, as discussed previously, Director Erdoes has changed the policy initially challenged by Plaintiffs in their complaint. Therefore, Plaintiffs' claims under section 1983 for prospective declaratory relief no longer present an actual case or controversy under Article III, and their claims for prospective declaratory relief are moot. Consequently, because this Court lacks subject-matter jurisdiction over those moot claims, it must dismiss those claims for lack of subject-matter jurisdiction under FRCP 12(h)(3).

Finally, in their complaint, Plaintiffs complain that, during the 81st session, they have been precluded from registering as lobbyists under the Nevada Lobbying Disclosure and Regulation

Act ("Lobbying Act") in NRS Chapter 218H. (ECF No. 1 at 13-15.) At the beginning of the 81st

session, the Lobbying Act defined the term "lobbyist" as follows:

> 1.   "Lobbyist" means, except as limited by subsection 2, a person who:
> (a) **Appears in person** in the Legislative Building or any other building in which
> the Legislature or any of its standing committees hold meetings; and
> (b) Communicates directly with a member of the Legislative Branch on behalf of
> someone other than himself or herself to influence legislative action, whether or not
> any compensation is received for the communication.

NRS 218H.080 (2019) (emphasis added).

However, during the 81st session, the Legislature enacted legislation amending the

definition of "lobbyist" to remove the requirement that a lobbyist must appear in person in the

Building. Assemb. Bill 110, 81st Leg., 2021 Reg. Sess., § 2 (Nev. eff. Mar. 18, 2021). As a result,

the definition of "lobbyist" now reads as follows:

> 1.   "Lobbyist" means, except as limited by subsection 2, a person who
> communicates directly with a member of the Legislative Branch on behalf of someone
> other than himself or herself to influence legislative action, whether or not any
> compensation is received for the communication.

NRS 218H.080 (2021).  In the legislation, the Legislature also provided that:

> **Sec.  3.**   During the 81st Session of the Nevada Legislature, any person who, on or
> after the effective date of this act [Mar. 18, 2021], qualifies as a lobbyist pursuant to
> NRS 218H.080, as amended by section 2 of this act, must:
> 1.   File a registration statement pursuant to NRS 218H.200, as amended by section
> 2.3 of this act, not later than 14 days after the effective date of this act, or not later
> than 2 days after the beginning of the person's lobbying activity as set forth in NRS
> 218H.200, as amended by section 2.3 of this act, whichever date is later, unless the
> person qualifies for an exemption or exception from the requirements to register as a
> lobbyist pursuant to any regulations adopted in accordance with NRS 218H.500.

Assemb. Bill 110, 81st Leg., 2021 Reg. Sess., § 3 (Nev. eff. Mar. 18, 2021).

Consequently, Plaintiffs are now required to register as lobbyists under the Lobbying Act as

amended during the 81st session. Moreover, at the time of filing this motion on May 4, 2021,

Plaintiffs Janine Hansen, Lynn Chapman and Melissa Clement have registered as lobbyists under

the Lobbying Act as amended during the 81st session.[3]

The Ninth Circuit has recently clarified that "in determining whether a case is moot, we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." Chambers, 941 F.3d at 1199. In this case, the Legislature's amendments to the Lobbying Act have rendered Plaintiffs' complaints regarding lobbyist registration moot. Consequently, because this Court lacks subject-matter jurisdiction over those moot complaints, it must dismiss them for lack of subject-matter jurisdiction under FRCP 12(h)(3).

**II.   This Court lacks subject-matter jurisdiction over all of Plaintiffs' federal claims under section 1983 for retrospective declaratory and monetary relief because those claims are barred by the Eleventh Amendment.**

Because Plaintiffs' claims for prospective declaratory and injunctive relief are moot, the only remaining claims that Plaintiffs could possibly allege in their complaint are claims for retrospective declaratory and monetary relief. However, this Court lacks subject-matter jurisdiction over any claims for retrospective declaratory and monetary relief because those claims are barred by the Eleventh Amendment. Consequently, because this Court lacks subject-matter jurisdiction over those claims, it must dismiss them for lack of subject-matter jurisdiction under FRCP 12(h)(3).

Under the Ex parte Young exception to a state's Eleventh Amendment immunity from suit in federal court, a plaintiff may bring federal claims under section 1983 asking for prospective

---

[3]   Legislative Defendants request this Court to take judicial notice of the Legislature's list of registered lobbyists for the 81st session available at its "publicly accessible website[] whose accuracy and authenticity is not subject to dispute." Ferris v. Wynn Resorts Ltd., 462 F.Supp.3d 1101, 1117 (D. Nev. 2020); Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010). The list is available at:
https://www.leg.state.nv.us/Lobbyist/81st2021/Lobbyist?lobbyist-grid-pageSize=10000.

declaratory or injunctive relief against state officials acting in their official capacities to enjoin their allegedly unconstitutional actions. <u>Ex parte Young</u>, 209 U.S. 123, 155-56 (1908). However, the <u>Ex parte Young</u> exception can be applied only to **prospective** declaratory or injunctive relief because it "does not permit judgments against state officers declaring that they violated federal law in the past." <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 146 (1993). Thus, "declaratory relief is not permitted under <u>Ex parte Young</u> when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." <u>Roberts v. New York</u>, 911 F.Supp.2d 149, 163 (N.D.N.Y. 2012).

As discussed previously, Director Erdoes has changed the policy initially challenged by Plaintiffs in their complaint. Therefore, Plaintiffs' claims for prospective declaratory relief no longer present an actual case or controversy under Article III, and their claims for prospective declaratory relief are moot. As a result, the only remaining claims that Plaintiffs could possibly allege in their complaint are claims for retrospective declaratory relief based on Director Erdoes' **past decisions** to restrict or prohibit lobbyists and the public from entering the Building. However, this Court lacks subject-matter jurisdiction over any claims for retrospective declaratory relief based on past actions because those claims are barred by the Eleventh Amendment. Consequently, because this Court lacks subject-matter jurisdiction over those claims, it must dismiss them for lack of subject-matter jurisdiction under FRCP 12(h)(3).

Finally, the Eleventh Amendment prohibits federal courts from exercising subject-matter jurisdiction over federal claims that seek monetary relief against state officials acting in their official capacity, unless the State has expressly waived its Eleventh Amendment immunity or Congress has expressly abrogated such immunity pursuant to its power under section 5 of the Fourteenth Amendment. <u>College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.</u>, 527

U.S. 666, 668-70 (1999); <u>Romano v. Bible</u>, 169 F.3d 1182, 1185-86 (9th Cir. 1999). Nevada has not waived its Eleventh Amendment immunity. NRS 41.031(3); <u>Austin v. State Indus. Ins. Sys.</u>, 939 F.2d 676, 677 (9th Cir. 1991). Nor has Congress abrogated such immunity for section 1983 claims. <u>Quern v. Jordan</u>, 440 U.S. 332, 345 (1979), *overruled on other grounds by* <u>Hafer v. Melo</u>, 502 U.S. 21, 27 (1991).

Thus, this Court lacks subject-matter jurisdiction over any claims by Plaintiffs for monetary relief against Legislative Defendants acting in their official capacity because those claims are barred by the Eleventh Amendment. Consequently, because this Court lacks subject-matter jurisdiction over those claims, it must dismiss them for lack of subject-matter jurisdiction under FRCP 12(h)(3).

**III.   Because this Court lacks subject-matter jurisdiction over all of Plaintiffs' federal claims under section 1983, this Court should decline to exercise supplemental jurisdiction over all of Plaintiffs' state constitutional claims.**

When this Court has supplemental jurisdiction over a state constitutional claim, it ordinarily must exercise that supplemental jurisdiction unless the Court articulates case-specific reasons for declining supplemental jurisdiction that are authorized under 28 U.S.C. § 1367(c). <u>Bahrampour v. Lampert</u>, 356 F.3d 969, 978-79 (9th Cir. 2004). Under section 1367(c), this Court is authorized to decline supplemental jurisdiction over a state constitutional claim when this Court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); <u>Levert v. Trump Ruffin Tower I, LLC</u>, No. 2:14-CV-01009-RCJ, 2015 WL 133792, at *5 (D. Nev. Jan. 9, 2015). In addition, under section 1367(c), this Court is authorized to decline supplemental jurisdiction over a state constitutional claim when "the claim raises a novel or complex issue of State law" or, "in exceptional circumstances, [when] there are other compelling reasons for declining jurisdiction." 28 U.S.C. §§ 1367(c)(1) & 1367(c)(4); <u>People's Leg. v. Miller</u>, No. 2:12-CV-272-JCM-VCF, 2012 WL 1119239, at *2-4 (D. Nev. Apr. 3, 2012).

As a general rule, if this Court dismisses all of Plaintiffs' federal claims for lack of subject-matter jurisdiction, "the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). The reason for this rule is that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable [state] law." Id. In determining whether a federal court should decline supplemental jurisdiction, the Supreme Court has stated:

> [A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (footnote omitted). Thus, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. at 350 n.7.

In this case, all of the factors to be considered under the supplemental jurisdiction doctrine—judicial economy, convenience, fairness and comity—point toward this Court declining to exercise supplemental jurisdiction over all of Plaintiffs' state constitutional claims. First, because this Court lacks subject-matter jurisdiction over all of Plaintiffs' federal claims under section 1983, all of those federal claims have dropped out of this lawsuit in its earliest stages and only Plaintiffs' state constitutional claims remain. Second, because this case is in its earliest stages, this Court has not committed significant judicial resources toward deciding the merits of Plaintiffs' state constitutional claims. Third, by declining supplemental jurisdiction, this Court can avoid having to decide whether Plaintiffs' state constitutional claims are moot under Nevada state

law, which is a decision that is better left to Nevada's state courts. See Degraw v. Eighth Jud. Dist. Ct., 419 P.3d 136, 139 (Nev. 2018) ("Cases presenting real controversies at the time of their institution may become moot by the happening of subsequent events." (quoting NCAA v. Univ. of Nev., 624 P.2d 10, 11 (Nev. 1981))). Fourth, by declining supplemental jurisdiction, this Court can avoid needless decisions of state constitutional law, especially because Plaintiffs' state constitutional claims under Article 1, Section 1 and Article 4, Section 15 of the Nevada Constitution raise novel, complex and policy-laden issues of state law and Nevada's legislative branch has a compelling interest in ensuring that the Nevada Supreme Court decides those state-law issues of first impression.

In determining whether to exercise supplemental jurisdiction, this Court should decline to rule on novel, complex or policy-laden issues of state law. Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1181 n.28 (9th Cir. 2003); O'Connor v. Nevada, 27 F.3d 357, 363 (9th Cir. 1994) (explaining that "the difficult question of Nevada constitutional law presented is the very sort of 'novel' issue that usually will justify declining jurisdiction over the claim."). This Court should be wary of ruling on state constitutional issues because such issues typically involve the state's sovereign interest in administering its own system of government. Dream Palace v. Maricopa County, 384 F.3d 990, 1022 (9th Cir. 2004); Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998); Trump Hotels v. Mirage Resorts, 140 F.3d 478, 487 (3d Cir. 1998); Doe v. Sundquist, 106 F.3d 702, 708 (6th Cir. 1997). This Court also should be wary of ruling on state constitutional issues because federal courts generally do not provide the best forum for interpreting state-specific constitutional provisions which do not have a similar federal counterpart. Young v. N.Y.C. Transit Auth., 903 F.2d 146, 164 (2d Cir. 1990).

In this case, Plaintiffs' state constitutional claims under Article 1, Section 1 and Article 4, Section 15 of the Nevada Constitution raise novel, complex and policy-laden issues of state law

that directly implicate Nevada's sovereign interest in administering its own system of government. In particular, because these claims directly implicate the legislative branch's inherent powers of institutional self-protection and self-preservation as a coequal department of state government, the legislative branch has a compelling interest in ensuring that the Nevada Supreme Court—as the final interpreter of the meaning of the Nevada Constitution—serves as the proper forum for deciding these important state-law issues of first impression. Moreover, to resolve these claims on the merits, this Court would need to interpret state-specific constitutional provisions with no federal counterpart. Because there are no reported cases from the Nevada Supreme Court directly on point to provide guidance on how to resolve these claims on the merits, this Court would need to develop new state constitutional standards and predict how the Nevada Supreme Court would decide the constitutional issues. See Eichacker v. Paul Revere Life Ins. Co., 354 F.3d 1142, 1145 (9th Cir. 2004); Ins. Co. of N. Am. v. Hilton Hotels, 908 F.Supp. 809, 814 (D. Nev. 1995). Because federal courts generally do not provide the best forum for resolving such novel, complex and policy-laden issues of state constitutional law, this Court should not exercise supplemental jurisdiction over these state constitutional claims.

Accordingly, in this case, all of the factors to be considered under the supplemental jurisdiction doctrine point toward this Court declining to exercise supplemental jurisdiction over all of Plaintiffs' state constitutional claims. Therefore, because this Court lacks subject-matter jurisdiction over all of Plaintiffs' federal claims under section 1983, this Court should decline to exercise supplemental jurisdiction over all of Plaintiffs' state constitutional claims.

//

//

//

//

## <u>CONCLUSION</u>

Based on the foregoing, Legislative Defendants ask this Court to: (1) dismiss all of Plaintiffs' federal claims for lack of subject-matter jurisdiction; and (2) decline to exercise supplemental jurisdiction over all of Plaintiffs' state constitutional claims.

DATED:   This __4th__ day of May, 2021.

Respectfully submitted,

By:   /s/  Kevin C. Powers
**KEVIN C. POWERS**, General Counsel
Nevada State Bar No. 6781
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
401 S. Carson St.
Carson City, NV 89701
Tel: (775) 684-6830; Fax: (775) 684-6761
Email: kpowers@lcb.state.nv.us
*Attorneys for Legislative Defendants Brenda J. Erdoes, in her official capacity*
*as Director of the Legislative Counsel Bureau of the State of Nevada, and Nicole*
*J. Cannizzaro, in her official capacity as Chair of the Legislative Commission of*
*the State of Nevada*

1

<u>**CERTIFICATE OF SERVICE**</u>

2

I hereby certify that I am an employee of the Nevada Legislative Counsel Bureau, Legal

3

Division, and that on the __4th__ day of May, 2021, pursuant to FRCP 5(b) and LR Part IC, I filed

4

and served a true and correct copy of the Legislative Defendants' Motion to Dismiss all Federal

5

Claims for Lack of Subject-Matter Jurisdiction and Decline Supplemental Jurisdiction over all

6

State Claims, by using the Court's CM/ECF system for electronic service directed to the

7

following:

8

**SIGAL CHATTAH, ESQ.**
CHATTAH LAW GROUP

9

5875 S. Rainbow Blvd. #203
Las Vegas, NV 89118

10

Chattahlaw@gmail.com
*Attorneys for Plaintiffs*

11

12

/s/  Kevin C. Powers
An Employee of the Legislative Counsel Bureau

13

14

15

16

17

18

19

20

21

22

23

24