UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SHAWN MEEHAN, *et al.*, | Case No. 3:21-cv-00100-MMD-WGC |
| Plaintiffs, | |
| v. | ORDER |
| BRENDA ERDOES, *et al.*, | |
| Defendants. | |

## I.   SUMMARY

Plaintiffs Shawn Meehan, Lynn Chapman, Janine Hansen, and Melissa Clement, registered lobbyists, sued Defendants Brenda J. Erdoes, in her official capacity as Director of the Legislative Counsel Bureau of the State of Nevada, and Nevada State Senator Nicole J. Cannizzaro, in her official capacity as Chair of the Legislative Commission of the State of Nevada because Defendants[1] had temporarily closed the Nevada State Legislature's Legislative Building to in-person lobbying in light of the COVID-19 pandemic, alleging violations of their state and federal constitutional rights, and seeking an injunction permitting them to immediately resume lobbying the Nevada Legislature in person. (ECF No. 1.) Defendants later reopened the Nevada Legislature to in-person lobbying and Plaintiffs conceded their motion for a preliminary injunction motion was moot. (ECF No. 35.) Before the Court is Defendants' motion to dismiss Plaintiffs' federal claims as moot that also urges the Court to decline jurisdiction over

---

[1] Plaintiffs initially also sued Stephen F. Sisolak and Aaron Darnell Ford (ECF No. 1), but later voluntarily dismissed them (ECF No. 21).

Plaintiffs' state-law claims.[2] (ECF No. 34 ("Motion").) As further explained below, primarily because the Court finds Defendants are unlikely to close the Nevada Legislature's Legislative Building to in-person lobbying again in response to the COVID-19 pandemic and Eleventh Amendment immunity shields them from retroactive claims, the Court will grant the Motion, dismiss all of Plaintiffs' federal claims for prospective relief as moot, dismiss Plaintiffs' retroactive federal claims, and decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## II.   BACKGROUND

The Court first describes Defendants' actions as pertinent to this case, and then describes the pertinent procedural history.

### A.   Defendants' Pertinent Actions

Nevada's Legislature meets in the Legislative Building. (ECF No. 34 at 5.) Defendant Erdoes is the official in charge of the Legislative Building. (*Id.*) In June 2020, Nevada's Legislature's Legislative Counsel Bureau provided Erdoes with a memorandum (eventually posted online) opining that she could close the Legislative Building in response to the COVID-19 pandemic. (*Id.* at 5-7; *see also* ECF No. 34-1 at 2-22 (the memorandum).)

In January 2021, Erdoes issued a public press release stating that the Legislative Building would be closed to all persons other than legislators, essential staff, and a small news media pool at the beginning of the 2021 legislative session. (ECF No. 34-1 at 24.) The press release further explained in pertinent part that in-person lobbying would begin to be allowed again once legislators and essential staff had been vaccinated against COVID-19. (*Id.*) That same press release stated that lobbyists would be allowed to lobby in person once Erdoes opened the Legislative Building if they either presented proof of vaccination or a negative COVID-19 test result, and that testing would be available free of charge. (*Id.*)

---

[2]Plaintiffs filed a response (ECF No. 37) and Defendants filed a reply (ECF No. 42).

On April 9, 2021, Erdoes issued another press release stating that the Legislative Building would reopen to in-person lobbying on April 15 and outlined entry requirements consistent with the January press release—requiring either a free, negative COVID-19 test result or proof of vaccination. (*Id.* at 27-28.) Then, on May 15, 2021, Erdoes further lifted restrictions on in-person lobbying, including dropping the requirement that vaccinated people wear face coverings, and dropping the requirement that lobbyists and others who wish to visit the Legislative Building first make an appointment.[3] (ECF No. 42-1.)

### B.    Pertinent Procedural History

Plaintiffs initiated this action on February 17, 2021, alleging that Defendant Erodes' decision to close the Legislative Building to in-person lobbying violated their rights under the United States and Nevada Constitutions. (ECF No. 1.) On February 24, 2021, Plaintiffs filed an emergency motion for a preliminary injunction, asking that the Legislative Building be immediately reopened to in-person lobbying. (ECF No. 6.) The Court issued a minute order stating that the normal briefing schedule would apply to the motion for preliminary injunction. (ECF No. 8.) Plaintiffs appealed that minute order. (ECF No. 11.) The United States Court of Appeals for the Ninth Circuit dismissed the appeal for lack of jurisdiction because the Court's minute order was not a final or appealable order. (ECF No. 15.) The Ninth Circuit's mandate issued April 1, 2021 (ECF No. 26), and the Court issued an order on mandate the following day (ECF No. 27).

By the time Plaintiffs filed their reply in support of their motion for preliminary injunction (ECF No. 33), Defendant Erodes had reopened the Legislative Building to in-person lobbying (ECF No. 42-1 at 27-28). Plaintiffs accordingly conceded that their request for a preliminary injunction was moot, and the Court vacated the hearing it had

---

[3]Plaintiffs filed some news articles as exhibits to their response (ECF No. 39), but the Court does not specifically summarize them here because they are cumulative of the information the Court summarized above from Defendants' exhibits.

3

set to address that motion. (ECF No. 35.) Defendants filed the Motion on May 4, 2021. (ECF No. 34.)

## III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *See Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). "Because subject matter jurisdiction goes to the power of the court to hear a case, it is a threshold issue and may be raised at any time and by any party." *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004) (citing Fed. R. Civ. P. 12(b)(1)).

Defendants specifically move to dismiss under Fed. R. Civ. P. 12(h)(3), which provides, "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." (ECF No. 34 at 12.) "A case that becomes moot at any point during the proceedings is 'no longer a 'Case' or 'Controversy' for purposes of Article III,' and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (citation omitted). "[A] suit becomes moot, 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted).

## IV. DISCUSSION

Like Defendants did in their Motion, the Court organizes its discussion below to map to Plaintiffs' types of claims.

### A. Federal Claims Seeking Prospective Relief

Defendants argue that the Court should dismiss Plaintiffs' federal claims for prospective relief as moot because they have re-opened the Legislative Building and are unlikely to reimpose similar restrictions on that building. (ECF No. 34 at 12-16.) Plaintiffs counter that their federal claims for prospective injunctive relief are not moot because either Defendants alleged constitutional violations are capable of repetition, yet evading

4

review, particularly because Defendants could change their policy and close the building again, or because they are likely to recur in the event of another pandemic. (ECF No. 37 at 6-12.) In Plaintiffs' words, "[i]t is clear that on the basis of another pandemic, even if this inherently short-lived claim is unlikely to recur as to Plaintiffs, it is likely, or even certain, to recur as to other Plaintiffs as it affects all lobbyists and the public alike." (*Id.* at 9.) The Court agrees with Defendants.

Plaintiffs do not dispute that Defendants reopened the Legislative Building and Plaintiffs were able to engage in in-person lobbying during this past legislative session. Indeed, Plaintiffs conceded their request for a preliminary injunction became moot once Defendants reopened the Legislative Building. (ECF No. 35.) Thus, the only question before the Court is whether an exception to the mootness doctrine applies. Said otherwise, is it reasonable to expect that Defendants will again close the Legislative Building to in-person lobbying in response to the COVID-19 pandemic?

The Court finds that it is not. As Defendants argue, back in January 2021, Erdoes issued a public press release explaining in pertinent part that the Legislature would begin to allow in-person lobbying again once legislators and essential staff had been vaccinated against COVID-19. (ECF No. 34-1 at 24.) That same press release stated that lobbyists would be allowed to lobby in person once Erdoes opened the Legislative Building if they either presented proof of vaccination or a negative COVID-19 test result, and that testing would be available free of charge. (*Id.*) On April 9, 2021, Erdoes issued another press release stating that the Legislative Building would reopen to in-person lobbying on April 15 and outlined entry requirements consistent with the January press release—requiring either a free, negative COVID-19 test result or proof of vaccination. (*Id.* at 27-28.) Then, on May 15, 2021, Erdoes further lifted restrictions on in-person lobbying, including dropping the requirement that vaccinated people wear face coverings, and dropping the requirement that lobbyists and others who wish to visit the Legislative Building first make an appointment. (ECF No. 42-1.)

///

The fact that Defendant Erodes stated in the January press release that she would lift restrictions once legislators and essential employee had been vaccinated, and then did in April 2021, tends to suggest that she would not, as Plaintiffs argue, arbitrarily re-impose restrictions in the near future. And Erdoes further lifted restrictions in May 2021 instead of again closing the Legislative Building to the public. Moreover, the Court's understanding is that the Legislative Building remained open to the public for the remainder of the 2021 legislative session because none of the parties filed any supplemental briefs or proffered any evidence suggesting to the contrary. In addition, the widespread availability of vaccines against COVID-19 makes it less likely that Erdoes would need to respond to a future surge in COVID-19 infections by closing the Legislative Building. Thus, Plaintiffs' argument that their claims for prospective relief are not moot because Erdoes is likely to close the Legislative Building to in-person lobbying again in response to the COVID-19 pandemic is unpersuasive.[4]

In addition, Plaintiffs' argument that their federal claims for prospective relief are not moot because Erdoes is likely to close the Legislative Building again the next time there is a pandemic caused by a novel virus or disease is too speculative and unconnected to their claims in this case. (ECF No. 37 at 9.) This case is undisputedly about the actions Defendants took in response to the COVID-19 pandemic, not hypothetical future pandemics. Further, Plaintiffs have presented no evidence that another pandemic caused by a different virus or disease is reasonably likely to occur.[5] And it is unlikely the Court could even order Defendants to keep the Legislative Building open in the event of a different, future pandemic because that theoretical dispute is unripe; and any injunction based on Plaintiffs' argument to this effect would be based on

---

[4]At one point, Plaintiffs appear to argue against their own interests that "[i]ndeed, the closure of governmental proceedings has been deemed proper in several instances where the government's interest was arguably less immediate and the restriction on access was equally broad[,]" suggesting that Plaintiffs agree Erdoes' actions were reasonable, and cutting against Plaintiffs' argument that she is likely to close the Legislative Building again in response to the COVID-19 pandemic. (ECF No. 37 at 22.)

[5]Of course, one may.

6

an invalid advisory opinion. *See, e.g.*, *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) ("Ripeness is an Article III doctrine designed to ensure that courts adjudicate live cases or controversies and do not 'issue advisory opinions [or] declare rights in hypothetical cases.' […] 'For a case to be ripe, it must present issues that are 'definite and concrete, not hypothetical or abstract.'") (citations omitted). Plaintiffs' argument based on a hypothetical, future pandemic is accordingly too speculative to be persuasive and otherwise unsound.

In sum, no exception to the mootness doctrine applies here. The Court dismisses Plaintiffs' federal claims seeking prospective, injunctive relief as moot.

## B.   Federal Claims Seeking Retroactive Relief

Defendants next argue the Court should dismiss Plaintiffs' retroactive federal claims because they are barred by the Eleventh Amendment. (ECF No. 34 at 16-18.) Plaintiffs respond with irrelevant arguments about absolute and qualified immunity that the Court will not further address here because they are not responsive to Defendants' arguments in their Motion. (ECF No. 37 at 12-22, 25-26.) And in pertinent part, Plaintiffs concede that the Eleventh Amendment bars their federal claims for retroactive relief. (*Id.* at 23.) However, Plaintiffs argue that Defendants waived their ability to assert Eleventh Amendment immunity. (*Id.* at 24.) Defendants reply that they did not waive their ability to assert Eleventh Amendment immunity because they raised it in their answer. (ECF No. 42 at 8-9.) The Court again agrees with Defendants.

To the extent there is any remaining dispute, the Eleventh Amendment bars Plaintiffs' federal claims for retroactive relief against Defendants. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (noting that the *Ex Parte Young* exception to Eleventh Amendment immunity "applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past"). Defendants asserted Eleventh Amendment immunity as an affirmative defense in their answer. (ECF No. 31 at 6.) Defendants accordingly did not waive their ability to assert their Eleventh Amendment immunity to

7

Plaintiffs' federal claims seeking retroactive relief in the Motion. *See Ashker v. California Dep't of Corr.*, 112 F.3d 392, 394 (9th Cir. 1997) (finding that defendants "did not waive the defense of sovereign immunity under the Eleventh Amendment" in part because they raised it in their answer). The Court thus dismisses Plaintiffs' federal claims for retroactive relief as barred by the Eleventh Amendment.

### C. State Law Claims

Defendants finally argue that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims after dismissing all of Plaintiffs' federal law claims and because those claims present complex and novel issues of state law best resolved by the Nevada Supreme Court. (ECF No. 34 at 18-21.) Plaintiffs' response assumes that the Court will not dismiss Plaintiffs' federal law claims. (ECF No. 37 at 25.) Considering that the Court has decided to dismiss Plaintiffs' federal law claims—as described above—those arguments are unpersuasive. (*Id.*)

The Court dismisses Plaintiffs' state law claims for three, alternative reasons. First, the Court has already dismissed all of Plaintiffs' federal law claims above. *See* 28 U.S.C. § 1367(c)(3) (providing that the district court may decline to exercise supplemental jurisdiction over state law claims where "the district court has dismissed all claims over which it has original jurisdiction"). Second, and contrary to Plaintiffs' argument (ECF No. 37 at 25), Plaintiffs' state law claims appear to raise novel and complex issues of state law. (ECF No. 1 at 22-24 (asserting violations of Nevada's Constitution).) *See also* 28 U.S.C. § 1367(c)(1) (providing that the district court may decline to exercise supplemental jurisdiction over state law claims where "the claim raises a novel or complex issue of State law"). Third, the principle of comity suggests the Court should allow Nevada's courts to adjudicate Plaintiffs' apparently novel state law claims challenging Defendants' interpretation of Nevada law that Defendants could temporarily close the Legislative Building to in-person lobbying in response to the COVID-19 pandemic. *See also* 28 U.S.C. § 1367(c)(4) (providing that the district court may decline to exercise supplemental jurisdiction over state law claims where, "in

8

exceptional circumstances, there are other compelling reasons for declining jurisdiction").

In sum, Defendants' Motion is granted, and this case is dismissed in its entirety. Plaintiffs' request to conduct discovery (ECF No. 37 at 25-27) is denied as futile.

**V.  CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that the Legislative Defendants' motion to dismiss (ECF No. 34) is granted as specified herein.

It is further ordered that this case is dismissed in its entirety.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 12th Day of November 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE